IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Lawrence,                :
          Appellant        :
                                 :
      v.                    :    No. 293 C.D. 2024
                                 :
Centre County District        :    Submitted: August 8, 2025
Attorney Office             :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE MATTHEW S. WOLF, Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                FILED: September 12, 2025

David Lawrence (Requester), *pro se*, appeals the January 9, 2024 order of the Court of Common Pleas of Centre County (trial court), which affirmed the August 31, 2023 Final Determination (OOR Final Determination) of the Office of Open Records (OOR). Therein, the OOR denied Requester's appeal from the Centre County District Attorney Office's (DA's Office or DA Office) denial of a Right-to-Know Law (RTKL)[1] request (Request) that Requester submitted to the DA's Office on June 15, 2023. The Request sought various categories of records and information regarding the criminal investigation that led to the filing of drug-related charges against Requester in 1997.

Also before the Court are Requester's (1) "Motion for Status Update" and (2) "Motion for Enhanced Relief and Damages Based on Wrongful Prosecution and Denial of Rights Under the Right-To-Know Law."

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101 – 67.3104.

After thorough review, we affirm the trial court's order and dismiss Requester's pending motions as moot.

## I.    FACTS AND PROCEDURAL HISTORY

Requester submitted the Request to the DA's Office on June 15, 2023, therein requesting 13 categories of records and information. As summarized and numbered by the DA's Office,[2] the Request sought the following:

1.    Records on the [DA Office]'s action taken to exclude [Requester] from his [Post Conviction Relief Act (PCRA)[3]] hearing by ordering hearing to exclude.

2.    [R]ecords or information on the [DA's Office] as to the investigation that took place on the date of 1997-98 by Agent Scott E[.] Merrill and officer Thomas Dann.

3.    [Information] on the initial authoritative supervisor or operation supervisor for the [Office of Attorney General (OAG)] in reference to investigation as of 1997-1998.

4.    [I]nformation in reference to when did the [DA's Office] c[o]me into the information that [Requester] had no priors for drug arrests.

5.    When did the [DA's Office] [find] out that the Agent Scott E. Merrill and Thomas Dann falsified documents and information in reference to the investigation.

6.    [I]nformation on all records in reference to the investigation department [of the OAG] or any other

---

[2] The Request was submitted electronically and did not originally contain separately numbered items. In its July 18, 2023 substantive response to the Request, the DA's Office organized it into 13 numbered categories of records and information. Requester, the DA's Office, the OOR, and the trial court have utilized these numbered categories throughout these proceedings without objection. Our review of the Request reveals that the DA Office's numbered list is a fair and accurate summary of the items in the Request, and we likewise will utilize it for purposes of our analysis.

[3] 42 Pa.C.S. §§ 9541 – 9546.

2

departments involved. Names and [a]uthority given to conduct such investigations.

7. [A]ll records on the [DA's Office] in reference to hearings and the [DA Office]['s] request to exclude [Requester] from his PCRA hearing.

8. Information on what happened in exclusion hear[ing], [outcome][,] and names and identity of my accusers.

9. [R]easons why the [DA's Office] or the [OAG] [did not] dismiss[ ] the charg[e]s after finding out the truth that [Requester] had no priors for dru[gs] to give probable cause to justify investigation.

10. [R]ecords or information giv[ing] the [DA's Office] or the [OAG] probable cause to investigate in this matter.

11. [R]ecords o[f] arrest, probable cause, and why this case was[ not] dismissed after further discoveries by the [DA's Office] and the [OAG].

12. [A]ll records in reference to the official duties and title by Agent Scott E. Merrill.

13. [W]hat part the [DA's Office] played in the investigation and the [OAG].

(Notes of Testimony (N.T.), 11/28/23, Cmwlth. Ex. 1; OOR Final Determination at 1-2.)

After invoking a 30-day extension pursuant to Section 902(b) of the RTKL, 65 P.S. § 67.902(b), the DA's Office sent a substantive response on July 18, 2023. Regarding Items 1, 7, and 8, the DA's Office denied that any responsive records exist. (N.T., 11/28/23, Cmwlth. Ex. 1.) Regarding Items 3, 6 (part), 12, and 13 (part), the DA's Office advised that it does not retain records regarding the OAG or other law enforcement agencies. *Id.* As to Items 2, 4, 5, 6 (part), 9, 10, 11 (part), and 13 (part), the DA's Office asserted that any responsive records were exempt from disclosure pursuant to both Section 708(b)(16) of the RTKL, 65 P.S. §

3

67.708(b)(16) (records of an agency relating to or resulting in a criminal investigation), and the Criminal History Record Information Act (CHRIA).[4]  *Id.* Lastly, regarding Items 4, 5, 9, and 11 (part), the DA's Office responded that those Items did not request records but, rather, posed questions that the DA's Office had no duty to answer under the RTKL.  *Id.*

Requester appealed to the OOR on August 3, 2023, and both Requester and the DA's Office submitted written statements and documentation in support of their positions.  The DA's Office submitted an "Attestation of Nonexist[e]nce/ Exemption of Records" (Andrews Attestation) executed by Joshua Andrews, Esq., an assistant district attorney and the DA's Office open records officer (ORO Andrews).  ORO Andrews attested that, upon receipt of the Request, he conducted a thorough examination of the DA Office's records and inquired with relevant DA's Office personnel concerning the Request.  (Andrews Attestation, ¶¶ 1-5.)  ORO Andrews further declared that, after conducting a good faith search for responsive records, he determined that (1) no responsive records existed within the DA Office's possession, custody, or control regarding Items 1, 3, 6 (to the extent Item 6 related to other agencies), 7, 8, 12, and 13 (to the extent Item 13 related to the OAG); (2) Items 4, 5, 9, and 11, rather than seeking records, sought answers to questions; and (3) Items 2, 4, 5, 6, 9, 10, 11, and 13 sought records or information exempt from disclosure pursuant to both Section 708(b)(16) of the RTKL and CHRIA.  *Id.* ¶¶ 6-8.

The OOR issued its Final Determination on August 31, 2023, in which it denied Requester's appeal in part, dismissed it in part, and transferred it in part to the DA's Office open records appeals officer for disposition.  More specifically, the

---

[4] 18 Pa.C.S. §§ 9101 – 9183.

OOR (1) *dismissed* Requester's appeal as to Items 4, 5, 9, and 11 (part), concluding that those Items or parts of them sought answers to questions to which the DA's Office was not obligated to respond under the RTKL;[5] (2) *denied* Requester's appeal as to Items 1, 3, 6 (part), 7, 8, 12, and 13 (part), concluding that the DA's Office, via the Andrews Attestation, submitted sufficient and unrebutted evidence establishing that no responsive records existed for those Items; and (3) *transferred* Requester's appeal as to Items 2, 6 (part), 10, 11 (part), and 13 (part) to the DA's Office open records appeals officer for disposition pursuant to Section 503(d) of the RTKL, 65 P.S. § 67.503(d), to the extent those Items facially or likely sought records related to a criminal investigation.[6] (OOR Final Determination at 4-9.)

On September 8, 2023, Matt F. Metzger, Esq., an assistant district attorney and the DA's Office open records appeals officer (AO Metzger), issued the

---

[5] Given its disposition as to Items 4, 5 and 9, the OOR did not address any alternative grounds asserted by the DA's Office for its denial as to these Items.

[6] Section 503(d)(2) of the RTKL provides:

> The district attorney of a county shall designate one or more appeals officers to hear appeals under Chapter 11 relating to access to criminal investigative records in [the] possession of a local agency of that county. The appeals officer designated by the district attorney shall determine if the record requested is a criminal investigative record.

65 P.S. § 67.503(d)(2). *See also Pennsylvanians for Union Reform v. Centre County District Attorney's Office*, 139 A.3d 354, 356 (Pa. Cmwlth. 2016) ("[T]he DA's Office is a local agency[,] [and a]ppeals from final determinations issued by an appeals officer designated by a district attorney are reviewed by the county courts of the trial court."); *Id.* at 357 (citing 65 P.S. § 67.503(d)(2) and *Miller v. County of Centre*, 135 A.3d 233, 239 (Pa. Cmwlth. 2016) (criminal investigative records present a special case that requires review by an appeals officer designated by a district attorney; the appeals officer is authorized to hear appeals relating only to access to criminal investigative records and is empowered to determine if a requested record is, in fact, a criminal investigative record)). Requester does not challenge the OOR's transfer to the DA's Office appeals officer.

DA Office's final determination as to the Items or portions of Items transferred from the OOR. With regard to the transferred portions of Items 6 and 13, AO Metzger concluded, based on the Andrews Attestation, that the DA's Office did not possess any responsive records. (N.T., 11/28/23, Cmwlth. Ex. 4, at 2 (unpaginated).) With regard to Items 2, 10, and the transferred portion of Item 11, AO Metzger concluded that those Items, together with the transferred portions of Items 6 and 13, facially requested records relating to a criminal investigation and, accordingly, were exempted from disclosure pursuant to Section 708(b)(16). *Id.* at 2-3. On those grounds, AO Metzger denied the entirety of the transferred portion of Requester's appeal. *Id.* at 3.

On October 4, 2023, and October 23, 2023, Requester filed duplicative appeals to the trial court from the OOR's Final Determination only. (Original Record (O.R.) Document (Doc.) Nos. 1, 2.)[7] The trial court scheduled both appeals for a hearing on November 18, 2023, at which Requester appeared *pro se* via video conference. The DA's Office, represented by ORO Andrews, admitted into evidence the Request, the DA Office's substantive response to the Request, the DA Office's position statement and attachments submitted to the OOR, the OOR's Final Determination, and the DA Office's final determination as to the Items transferred from the OOR. (N.T., 11/28/23, at 6-8; Cmwlth. Exs. 1-4.) ORO Andrews also offered argument as to each Item of the Request and requested that the OOR Final Determination be affirmed in its entirety. *Id.* at 8-19. Requester offered argument in response and further relied on a July 15, 2022 letter sent to Requester from the

---

[7] Requester's appeals to the trial court both indicate that they were taken only from the OOR's Final Determination issued on August 31, 2023. Neither appeal mentions or attaches the DA Office's September 8, 2023 final determination as to the transferred Items of the Request.

OAG regarding a RTKL request Requester submitted to that office on July 8, 2022. *Id.* at 20-42.[8]

On January 9, 2024, the trial court denied Requester's appeal and affirmed the OOR's Final Determination "for the reasons stated therein." (Trial Court Order, 1/9/24; O.R. Doc. No. 5.) Requester appealed to this Court on February 2, 2024. On May 14, 2024, Requester filed what the trial court construed as a Pennsylvania Rule of Appellate Procedure 1925(b) concise statement, in which Requester asserted two errors. (O.R. Doc. No. 10.) First, Requester asserted that the trial court erred in not considering that the DA Office's response to the Request suggests that the OAG possesses responsive records. Second, Requester contended that the trial court erred in not considering that police blotter reports and the information contained in them are not exempt from disclosure pursuant to Section 708(b)(16) of the RTKL.[9]

---

[8] The OAG's July 15, 2022 letter, which was attached to both of Requester's appeals to the trial court, invoked a 30-day extension to respond to the request, which sought the following records and information:

> [I]nformation on a[n] investigation that took place on or about 1997-1998. A[n] investigation conducted by Merrill Scott E. Agent. . . [.] Requesting all information in relation to this matter and to what extent was the U.S. [A]ttorney [G]eneral office involved in the plot/attempt or threat by Agent Merrill Scott E. [o]n my life and freedom. Please inform on all record[s] in association with this case and the Defendant Dave Lawrence aka David Long.

(OAG Letter, 7/15/2022, at 1 (unpaginated).) On August 15, 2022, the OAG sent a written response in which it advised that, after a full and complete search, it determined that no responsive records existed. This written response is not contained anywhere in the records from either the OOR or the trial court. It appears for the first time appended to Requester's appellate brief to this Court.

[9] Section 708(b)(16) of the RTKL, which exempts from disclosure any agency records "relating to or resulting in a criminal investigation," excludes from the exemption "information contained in a police blotter as defined in [Section 9102 of CHRIA,] 18 Pa.C.S. § 9102 (relating to **(Footnote continued on next page…)**

The trial court issued a supplemental opinion on June 17, 2024, in which it addressed both issues. As to Requester's first issue, the trial court cited to argument from ORO Andrews at the hearing on November 18, 2024, in which ORO Andrews explained that the DA's Office merely suggested that the OAG could have responsive records, but the DA's Office could not speak as to the records possessed by other agencies. (Trial Court Rule 1925(a) (Rule 1925(a)) Op. at 2, quoting N.T., 11/28/23, at 11-12.) The trial court further noted that the OAG was not a party to these proceedings and that any RTKL requests submitted to that office by Requester were not before the court. Because the Andrews Attestation sufficiently established that the DA's Office itself did not possess responsive records, the trial court concluded that this issue was without merit. (Rule 1925(a) Op. at 2-3.)

Regarding Requester's second issue, the trial court assumed that Requester was referring to Item 4 of the Request, which sought information regarding when the DA's Office learned that Requester had no prior drug arrests. (Rule 1925(a) Op. at 3.) The trial court agreed with the DA's Office that such information was not itself a record and, even if it was, it would be exempt as a criminal investigation record. The trial court further pointed out that Requester neither asked for police blotter records nor presented any evidence tending to establish that the information sought in the Request was contained in a police blotter possessed by the DA's Office or any other office. *Id.* at 4-5. On that basis, the trial court concluded that this issue also was without merit.

---

definitions) *and utilized or maintained by the Pennsylvania State Police, local, campus, transit or port authority police department or other law enforcement agency . . . .*" 65 P.S. § 67.708(b)(16) (emphasis added). Section 9102 of CHRIA defines "police blotter" as "[a] chronological listing of arrests, usually documented contemporaneous with the incident, which may include, but is not limited to, the name and address of the individual charged and the alleged offenses." 18 Pa.C.S. § 9102 (definitions).

## II. DISCUSSION[10]

In this Court, Requester presents the same two issues for our review.[11] "The objective of the RTKL . . . is to empower citizens by affording them access to information concerning the activities of their government[, and it is designed to] promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Pennsylvania State Education Association v. Department of Community & Economic Development*, 148 A.3d 142, 155 (Pa. 2016) (internal quotation marks and citations omitted). Thus, "[a] record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record," *Pennsylvania Public Utility Commission v. Friedman*, 293 A.3d 803, 814-15 (Pa. Cmwlth. 2023) (internal quotation marks omitted) (citing Section 305(a) of the RTKL, 65 P.S. § 67.305(a)), and "the exceptions to disclosure of public records must be narrowly construed." *Office of the Governor v. Davis*, 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015) (*en banc*).

---

[10] Our review in this context is circumscribed as follows:

> Under the RTKL, when the request for records was directed to a local agency, [the trial court] is the "Chapter 13" court and reviews the determination issued by [the] OOR with a de novo standard and a plenary scope; [the trial court] may substitute its own findings of fact for that of the agency or rely upon the record created below. When [the trial court] is the "Chapter 13" or reviewing court, our appellate review is limited to whether the trial court has committed an error of law and whether the findings of fact are supported by substantial evidence.

*Office of the District Attorney v. Bagwell*, 155 A.3d 1119, 1123 n.3 (Pa. Cmwlth. 2017).

[11] The DA's Office did not file an appellate brief in this Court, and by order exited February 10, 2025, we precluded it from doing so. We therefore have been left to address and respond to Requester's arguments without the benefit of any appellate advocacy from the DA's Office.

Before we reach the merits of Requester's issues, we first must determine whether they are waived due to Requester's failure to brief them adequately or, in this case, at all. Although Requester's brief states the questions involved, it does not develop, discuss, or set forth any law or argument regarding either of them. (Requester Br. at 3-5.) Instead, the brief is devoted entirely to setting forth the mootness doctrine and arguments as to why this appeal is not moot. *Id.* Requester then refers to the United States Supreme Court's decision in *Janus v. American Federation of State, County and Municipal Employees, Council 31*, 585 U.S. 878 (2018), and argues that "fair share assessments against individuals who are not members of the union that represents them are unconstitutional." *Id.* at 6. For relief, Requester requests, based on *Janus*, that we *affirm* the trial court's determination that this case *is* moot. *Id.*

The rules of appellate briefing are mandatory and apply to lawyers and *pro se* litigants alike. *Richardson v. Pennsylvania Insurance Department*, 54 A.3d 420, 425 (Pa. Cmwlth. 2012). We nevertheless will construe *pro se* filings liberally, and we may disregard even egregious violations of the appellate rules where they do not preclude meaningful review or our ability to discern a *pro se* appellant's argument. *Id.* at 425-26. Here, however, Requester's brief does not identify any particular Items of the Request, set forth any meaningful argument, cite to the record, or mention or discuss any *pertinent* legal authority regarding the issues he presents for review. *See* Pa.R.A.P. 2119(a). His brief exclusively discusses mootness (which does not apply in this case) and requests relief contradictory to that he initially sought in this appeal. We therefore conclude that Requester's brief does not permit meaningful appellate review and, accordingly, his issues are waived. *Commonwealth*

10

*v. Johnson*, 985 A.2d 915, 924 (Pa. 2009); *Berner v. Montour Township*, 120 A.3d 433, 437 n.6 (Pa. Cmwlth. 2015).

Nevertheless, and mindful of both Requester's *pro se* status and the DA Office's failure to file an appellate brief in this Court, we offer a brief explanation as to why, even if Requester's issues were not waived, we still would affirm the trial court. Requester first argues that the trial court erred because the DA Office's written response to the Request indicates that the OAG might possess responsive records. When an agency receives a RTKL request, it must "make a good faith effort to determine whether it has possession, custody[,] or control of the identified record." *Smith Butz, LLC v. Pennsylvania Department of Environmental Protection*, 142 A.3d 941, 945 (Pa. Cmwlth. 2016) (internal quotations and citation omitted). Nevertheless, "an agency is not required to create a record if the requested record does not exist. Nor is [an agency] required to compile the record in a new or novel format." *Hodges v. Pennsylvania Department of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011) (citing Section 705 of the RTKL, 65 P.S. § 67.705). Where an agency determines that it does not possess responsive records, it "bears the burden of demonstrating that it has reasonably searched its records to establish that a record does not exist." *Department of Labor and Industry v. Earley*, 126 A.3d 355, 357 (Pa. Cmwlth. 2015). The agency may carry its burden "with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record." *Hodges*, 29 A.3d at 1192 (citation omitted). "[U]nsworn attestations made subject to the penalties of perjury are considered competent evidence to sustain an agency's burden of proof." *Pennsylvanians for Union Reform v. Pennsylvania Department of State*, 138 A.3d 727, 733 n.13 (Pa. Cmwlth. 2016) (citation omitted). In the absence of competent evidence that the agency acted in bad faith or that the

11

records exist, averments in an agency affidavit should be accepted as true. *Smith Butz, LLC*, 142 A.3d at 945. *See also McGowan v. Pennsylvania Department of Environmental Protection*, 103 A.3d 374, 382-83 (Pa. Cmwlth. 2014).

Here, the DA's Office submitted the Andrews Attestation, which sets forth the details of ORO Andrews' personal knowledge of the Request and the DA Office's good faith search for responsive records. ORO Andrews attested that the search did not unearth any records responsive to Items 1, 3, 7, 8, and 12, as well as Items 6 and 13 to the extent those Items requested records regarding other agencies, including the OAG. (Andrews Attestation, ¶ 6.) ORO Andrews further explained that "[i]t is understood that this does not mean that the requested records do not exist within another agency's possession[,] custody[,] [or] control." (Andrews Attestation, ¶ 7.) Although Requester appears to contend that the DA Office's qualified response to these Items tends to indicate that responsive records exist *somewhere*, including potentially with the OAG, we disagree. Requester presented no *evidence* before the trial court tending to show that the Andrews Attestation was inaccurate or that the DA's Office engaged in bad faith. Further, and as the trial court explained, ORO Andrews did not in his attestation suggest that responsive records did exist elsewhere. He merely disclaimed the ability to make any assertions as to whether any other agencies identified in the Request, including the OAG, had any responsive records. *See* N.T., 11/28/23, at 11-12. Because Requester did not present any evidence establishing that the DA Office's search was not diligent, the DA's Office acted in bad faith, or that responsive records in fact exist, his arguments in this respect lack merit.

Requester argues secondly that the trial court erred because it did not consider that police blotter records, as defined by CHRIA, are not exempted from

12

disclosure pursuant to Section 708(b)(16) of the RTKL. An agency receiving a RTKL request bears the burden to establish that a responsive record is exempt from public access by a preponderance of the evidence. 65 P.S. § 67.708(a)(1). The preponderance standard is the lowest of all the evidentiary standards and is equivalent to asking whether something is more likely true than not true. *Office of General Counsel v. Bumstead*, 247 A.3d 71, 77 n.9 (Pa. Cmwlth. 2021). An agency may satisfy its burden to prove an exemption by way of a sworn affidavit or statement made under penalty of perjury. *Sherry v. Radnor Township School District*, 20 A.3d 515, 520 (Pa. Cmwlth. 2011).

Requester's argument in this respect fails for multiple reasons. First, and most basically, Requester *did not appeal* the final determination of AO Metzger, which is the only determination in the proceedings below that addressed the applicability of the criminal investigation exemption in Section 708(b)(16) of the RTKL. Requester made clear in his appeals to the trial court that he was appealing only the OOR's August 31, 2023 Final Determination, which transferred consideration of the Section 708(b)(16) exemption to AO Metzger. Further, in its January 9, 2024 order, the trial court affirmed only the OOR's Final Determination and made no reference to AO Metzger's September 8, 2023 final determination. Thus, the applicability of the criminal investigation exemption was not before the trial court and cannot be raised for the first time in this Court.

Nevertheless, because the DA's Office presented evidence and argument concerning the criminal investigation exemption at the hearing on November 28, 2023, and because the trial court addressed this issue in its Rule 1925(a) opinion, we offer further explanation as to why it lacks merit. The Request *on its face and in its entirety* requests records concerning the criminal investigation

13

of Requester that occurred in or about 1997. (N.T., 11/28/23, Cmwlth. Ex. 1.) Based on the plain reading of the Request, the DA's Office asserted the criminal investigation exemption both in its initial response to Items 2, 4, 5, 6, 9, 10, 11, and 13, and in the Andrews Attestation regarding those same Items. *Id.*; Andrews Attestation, ¶ 9. AO Metzger agreed that the exemption was established via the Andrews Attestation for Items 2, 6, 10, 11, and 13 of the Request (the Items transferred by the OOR) because those items "specifically solicit information relating to a particular criminal investigation." (N.T., 11/28/23, Cmwlth. Ex. 4, at 2 (unpaginated).) The trial court noted, and we agree, that Requester failed to present to that court any argument or evidence tending to show either (1) that the Andrews Attestation was insufficient to establish the applicability of the criminal investigation exemption, or (2) that any of the Items of information or records sought in the Request were contained *anywhere* in a police blotter, let alone in a police blotter utilized or maintained by the DA's Office. *See* 65 P.S. § 67.708(b)(16).

Accordingly, even if this issue was not waived and had been properly raised and preserved below, we would find it to be without merit.

### III. CONCLUSION

Having determined that all of Requester's issues are waived and, in any event, also are without merit, we affirm the trial court's order. Given our disposition, we also dismiss as moot Requester's Motion for Status Update and Motion for Enhanced Relief and Damages Based on Wrongful Prosecution and Denial of Rights Under the Right-To-Know Law.

_____
PATRICIA A. McCULLOUGH, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Lawrence,               :
          Appellant      :
                          :
        v.              :   No. 293 C.D. 2024
                          :
Centre County District    :
Attorney Office          :

## ***ORDER***

AND NOW, this 12th day of September, 2025, the January 9, 2024 order of the Court of Common Pleas of Centre County is AFFIRMED. It further is ordered that Appellant David Lawrence's Motion for Status Update and Motion for Enhanced Relief and Damages Based on Wrongful Prosecution and Denial of Rights Under the Right-To-Know Law are DISMISSED as moot.

_____
PATRICIA A. McCULLOUGH, Judge